YONO v DEPARTMENT OF TRANSPORTATION

Docket No. 308968. Submitted November 9, 2012, at Lansing. Decided
December 20, 2012, at 9:20 a.m. Leave to appeal sought.

Helen Yono brought an action in the Court of Claims against the
Department of Transportation, seeking damages for injuries sus-
tained when she fell while walking near the sidewalk next to her
car that was parked in a paved and striped area of M-22 designated
for parallel parking. The court, Clinton Canady, III, J., denied
defendant's motion for summary disposition on the basis that the
highway exception to governmental immunity from tort liability,
MCL 691.1402(1), applied. The court determined that the portion
of the highway designated for parallel parking was designed for
vehicular travel within the meaning of MCL 691.1402(1). Defen-
dant appealed.

The Court of Appeals *held*:

For purposes of the highway exception to governmental immu-
nity, MCL 691.1402(1), a governmental agency's duty to repair and
maintain highways, and liability for that duty, extends only to the
improved portion of the highway designed for vehicular travel. The
trial court did not err by denying defendant's motion for summary
disposition on the basis that the highway exception to governmen-
tal immunity applied. M-22 and the portion of it designated for
parallel parking are part of a contiguous whole; there was no
physical separation like a median, driveway, or other barrier
between the center of the highway and the parallel parking area.
The lanes designated for parallel parking were clearly designed to
permit vehicles to merge from the center lanes to the parking lanes
and from the parking lanes to the center lanes. When unoccupied,
the parallel parking lanes were also designed to be used for passing
around stopped or slowed vehicles, as well as for turning off, or
even as a thoroughfare at times given its width. MCL
257.637(1)(b) makes such driving legal when the highway has
unobstructed pavement not occupied by parked vehicles of suffi-
cient width for two or more lines of moving vehicles in each
direction. The character of the parallel parking area was not
altered simply because a person may legally park within the
designated parallel parking area because it is plainly designed for

regular if limited vehicular travel. Unlike the shoulder of a highway, which is not designed for vehicular travel, the area along M-22 that was designated for parallel parking serves a dual purpose by being integrated into the highway's main travel lanes and being designed for regular vehicular travel in a variety of contexts. Accordingly, defendant could not claim governmental immunity to evade liability.

Affirmed.

TALBOT, P.J., dissenting, would have reversed the trial court's order denying defendant's motion for summary disposition. Judge TALBOT would have concluded that the marks for parallel parking made it clear that the area was not designed for vehicular travel and that the lack of a barrier between the highway and parallel parking area was irrelevant to whether the area was designed for vehicular travel.

GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — PARALLEL PARKING AREAS ADJOINING HIGHWAYS.

For purposes of the highway exception to governmental immunity, a governmental agency's duty to repair and maintain highways, and liability for that duty, extends only to the improved portion of the highway designed for vehicular travel; an area of a highway that is designated for parallel parking that is not separated from the center of the highway by a median, driveway, or other barrier and has a dual-purpose design for use (when unoccupied) to travel around stopped or slow vehicles and for turns constitutes an improved portion of the highway designed for vehicular travel (MCL 691.1402[1]).

*Smith & Johnson, Attorneys, P.C.* (by *L. Page Graves*), for Helen Yono.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Justin Gray*, Assistant Attorney General, for the Department of Transportation.

Before: TALBOT, P.J., and BECKERING and M. J. KELLY, JJ.

M. J. KELLY, J. In this suit involving a trip and fall, defendant, the Department of Transportation (Depart-

ment), appeals by right the trial court's order denying the Department's motion to dismiss plaintiff Helen Yono's claim on the basis that it was barred by governmental immunity. See MCR 7.202(6)(a)(v). On appeal, the Department's sole issue is whether the trial court erred when it determined that Yono's fall occurred on a highway as defined under the highway exception to governmental immunity. See MCL 691.1402(1). Because we conclude that the trial court did not err, we affirm.

### I. BASIC FACTS

In July 2011, Yono drove with her daughter to Suttons Bay, Michigan to shop. Yono parked in a parallel parking spot along M-22, which is otherwise known as St. Joseph Street within Suttons Bay, across the street from the business she wished to patronize. She went to the business, and after she discovered that the business was closed, she crossed back to her car. As she was nearing the sidewalk next to her car, Yono stepped into a depression, rolled her ankle, and fell. She suffered a broken ankle along with other injuries.

Yono sued the Department in November 2011 for damages arising from her injuries. In her complaint, Yono alleged that under MCL 691.1402(1), the Department had a duty to keep M-22 in reasonable repair, breached that duty, and proximately caused her injuries.

The Department moved for summary disposition later that same month. In its motion, the Department argued that it was entitled to have Yono's complaint dismissed under MCR 2.116(C)(7) because it was immune from liability. The Department agreed that it had a duty to maintain the "improved portion of the highway designed for vehicular travel," see MCL 691.1402(1), but contended that the only area of the highway that was designed for vehicular travel was that portion that its expert witness

identified as the "travel lanes." The Department's expert opined that the travel lanes were the first 11 feet on either side of the highway's center line. Stated another way, the Department took the position that it only had a duty to maintain the centermost 22 feet of the highway because that was the portion that was commonly used as a thoroughfare. Because the area where Yono fell was for parallel parking and not for travel, the Department maintained that it could not be liable for any defects within that area under MCL 691.1402(1). Accordingly, it asked the trial court to dismiss Yono's claim on that basis.

In response, Yono argued that the highway at issue extended from curb to curb and that the parallel parking lanes are designed for vehicular travel. Yono attached an affidavit from her own expert to support her contention. Yono's expert explained that the "entire paved surface consists of travel lanes designed for vehicular travel." These lanes, he explained, are given different labels to identify their location and purpose, but all the lanes are still for travel. Indeed, he noted that motorists may lawfully use a parking lane to merge into a through lane from a parked position and may enter an unoccupied parking lane in an approach to make a right turn. Yono also noted that the facts of her case closely matched those in *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143; 615 NW2d 702 (2000), in which our Supreme Court held that the governmental entity in that case was not entitled to immunity even though the plaintiff fell near the edge of the highway where she had parked.

The trial court examined the photographs and determined that the portion of the highway designated for parallel parking was designed for vehicular travel within the meaning of MCL 691.1402(1) because it was clear that cars "have to travel on that to park." The

court also noted that the parallel parking lane was not a shoulder and not intended for emergencies alone. Because the parallel parking lanes were for travel, the Department had a duty to keep that portion of the highway in reasonable repair under MCL 691.1402(1) and, accordingly, was not entitled to immunity. For that reason, the trial court entered an order denying the Department's motion in February 2012.

The Department then appealed in this Court.

## II. THE HIGHWAY EXCEPTION

### A. STANDARDS OF REVIEW

On appeal, the Department argues that the trial court should have dismissed Yono's claim under MCR 2.116(C)(7) because it was immune to suit and the highway exception to that immunity did not apply to the defect at issue. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo the proper interpretation and application of statutes such as the highway exception to governmental immunity. *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).

### B. DESIGNED FOR VEHICULAR TRAVEL

The Department is generally immune from tort liability when engaged in the exercise or discharge of a governmental function, such as constructing and maintaining a highway. MCL 691.1401(f); MCL 691.1407(1). Our Legislature has, however, established an exception to this immunity for those governmental agencies that have jurisdiction over a highway. In pertinent part, MCL 691.1402(1) provides:

> A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.

But because the Legislature's grant of immunity is broad and the exceptions are limited, our Supreme Court has held that the exceptions—including the highway exception—must be narrowly construed. *Nawrocki,* 463 Mich at 158-159.

A governmental agency's duty—and, accordingly, its potential for liability—does not extend to the whole highway; rather, the Legislature provided that "the duty of [a governmental agency] to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel . . . ." MCL 691.1402(1). And, consistently with its holding that the exception must be narrowly construed, our Supreme Court has determined that the statutory reference to the "improved portion designed for vehicular travel" limits the governmental agency's duty on the basis of the "*location* of the alleged dangerous or defective condition; if the condition is not located in the actual roadbed designed for vehicular travel, the narrowly drawn highway exception is inapplicable and liability does not attach." *Nawrocki,* 463 Mich at 162. The Court clarified that the improved portion designed for vehicular travel encompasses only the " 'traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.' " *Id.* at 180, quoting *Scheurman v Dep't of Transp,* 434 Mich 619, 631; 456 NW2d 66 (1990). Accordingly, a plaintiff "making a claim of inadequate signage, like a plaintiff making a claim of inadequate street lighting or vegetation obstruction, fails to plead

in avoidance of governmental immunity because signs are not within the paved or unpaved portion of the roadbed designed for vehicular travel." *Nawrocki,* 463 Mich at 183.

In *Nawrocki,* the plaintiff was a passenger in a vehicle driven by her husband. After her husband parked next to the curb, she got out of the vehicle, walked to the back, and stepped off the curb onto the roadway. She stepped onto cracked and broken pavement, fell, and was injured. *Id.* at 152.

In Nawrocki's appeal, our Supreme Court had to determine whether the highway exception to governmental immunity applied to pedestrians. *Id.* at 162. The Court determined that it did, stating that: "we are persuaded that the exclusionary language of the fourth sentence . . . narrows the duty . . . with regard to the *location* of the dangerous or defective condition, not to the *type* of travel *or* traveler." *Id.* at 171. The Court then concluded that, because Nawrocki pleaded that she was injured by a dangerous or defective condition on the improved portion of the highway designed for vehicular travel—that is, the traveled portion of the roadbed, she had pleaded in avoidance of governmental immunity. *Id.* at 172.

Our Supreme Court returned to the proper scope of the phrase "improved portion of the highway designed for vehicular travel" in *Grimes v Dep't of Transp,* 475 Mich 72; 715 NW2d 275 (2006). In that case, the driver of a truck veered onto the highway's shoulder after running over a mound of dirt. *Id.* at 74. As a result of the grade differential between the shoulder's graveled portion and its paved portion, the driver of the truck lost control as he tried to reenter the highway and struck Michael Grimes, who had just merged onto the highway. *Id.* at 74-75. Grimes later sued the Department for negligently maintaining the shoulder. *Id.* at 75.

On appeal, our Supreme Court had to determine whether the highway's shoulder was "designed for vehicular travel" as that phrase is used in MCL 691.1402(1). And whether it was designed for vehicular travel, the Court explained, depended on the meaning of "travel":

> Taken in its broadest and most literal sense, "travel" in the highway exception could include the shortest incremental movement by a vehicle on an improved surface. Therefore, in an emergency, when a motorist momentarily swerves onto the shoulder, the motorist can be said to have traveled on the shoulder. Were this broadly inclusive definition of "travel" appropriate, we might be persuaded by plaintiffs' argument that a shoulder is designed for vehicular travel. However, we reject this broad definition proposed by plaintiffs. [*Id.* at 89.]

The Court rejected the broad definition of travel because it was clear that the Legislature "did not intend to extend the highway exception indiscriminately to every 'improved portion of the highway.' " *Id.* Rather, the use of the limiting phrase "designed for vehicular travel" showed that the Legislature believed that there were improved portions of the highway that "are not designed for vehicular travel." *Id.* Moreover, the expansive definition conflated the concepts of design and contemplated use. *Id.* at 90. That is, just because the Department contemplates that a driver "might *use* an improved portion of the highway does not mean that that portion was 'designed for vehicular travel.' " *Id.* Instead, the question is whether the improved portion was specifically *designed* for vehicular travel. Hence, the Department only has a duty to repair and maintain that portion of the highway that contains "travel lanes." *Id.* at 91.

The Court then concluded that as a matter of law, shoulders were not designed for vehicular travel within

the meaning of MCL 691.1402(1) and, as such, were not travel lanes. Accordingly, it determined that Grimes's claim against the Department had to be dismissed. *Id.* at 92.

C. APPLYING THE LAW

On appeal, the Department argues that the lanes at issue are parallel parking lanes that were similarly not designed for vehicular travel. More specifically, the Department maintains that parking lanes are necessarily not travel lanes because vehicles do not use those lanes as a thoroughfare. But the Legislature did not limit the duty to maintain and repair highways under the highway exception to a particular type of travel lane, such as a thoroughfare; it imposed a duty to repair and maintain any part of the highway that was specifically designed for vehicular *travel*. MCL 691.1402(1). And while our Supreme Court refused to give the term "travel" its broadest possible definition, it also did not narrow it to exclude specialized, dual-purpose, or limited-access travel lanes. See *Grimes*, 475 Mich at 89-91.

Under the Department's preferred definition, it would have no duty to repair or maintain a variety of highway improvements that were plainly designed for vehicular travel, but nevertheless not part of that portion of the highway commonly used as the thoroughfare; the Department would have no duty to repair or maintain left-turn lanes, merge lanes, on- and off-ramps, right-turn lanes, lanes designed to permit vehicles to access the opposite side of a divided highway, such as median U-turn lanes and emergency turnarounds, or even the excess width provided on rural highways to permit drivers to proceed around vehicles that are waiting to turn left. Yet in each case, the lanes,

or parts of lanes, are plainly designed for vehicular travel—albeit limited travel. We cannot give MCL 691.1402(1) a contrived meaning that contravenes its plain and ordinary sense. See *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196, 694 NW2d 544 (2005). As our Supreme Court explained in *Grimes*, it is the *design* that controls whether the improvement falls within the highway exception. *Grimes*, 475 Mich at 90. As such, if the improvement was *designed* for vehicular travel, it does not matter that it is not located within that portion of the highway that is mainly used for travel.

Here, the highway—including that portion designated for parallel parking—is a contiguous whole; the portion where parallel parking is permitted is not physically separated from the center of the highway by a median, driveway, or other barrier. Absent the painted markings, the area for parallel parking would be indistinguishable from the remainder of the highway. It is also evident that the lanes designated for parking were designed to permit vehicles to merge both from the center lanes to the parking lanes and from the parking lanes to the center lanes.

In addition to this limited—but regular—form of vehicular travel, it is also evident from the record that the parallel parking lanes were designed to be used (when unoccupied) to travel around stopped or slow vehicles that are in the center lanes and for turns. Indeed, when there are few or no cars parked in the parallel parking spots, there is nothing to preclude drivers from using the parking lanes as a thoroughfare. See MCL 257.637(1)(b) (making it legal to use that type of area as a travel lane when the highway has "unobstructed pavement not occupied by parked vehicles of sufficient width for 2 or more lines of moving vehicles in

each direction"). Stated another way, M-22, within the village of Suttons Bay, is an extrawide two-lane or, alternatively, four-lane thoroughfare that contains paint markings in that portion of the highway closest to the curb to facilitate the orderly parking of vehicles. The fact that a driver may legally park within this portion of the highway, and thereby obstruct its use as a thoroughfare, does not alter its character; it is still plainly designed for regular, if limited, vehicular travel.

In an affidavit attached to the Department's motion, Gary Niemi averred that he worked for the Department and had researched the area of the highway at issue. He stated that the "portion of the highway designed for through traffic measures 22 feet wide," as required under federal standards. Nevertheless, it is clear from his averments and the diagram attached to his affidavit that the highway contained more than 15 feet of paved surface on either side of these "travel" lanes—more than enough space for a second travel lane. Despite the fact that the "buffer" areas contain no painted markings at all, and that there is no physical or legal barrier to a driver's use of the area designated for parallel parking for travel, the Department contends that it has no duty to repair or maintain the "parallel parking" and "buffer" areas—that is, no duty to repair or maintain more than half the surface area of the highway at issue—because those areas are outside the *minimum* lane width required under federal standards. Taken to its logical conclusion, the Department's interpretation must mean that any time parking is permitted on a highway, the Department ceases to be responsible for the repair and maintenance of the area outside that used as a thoroughfare. And in the case of a common residential street that allows for on-street parking, this means that the Department would have no duty to maintain the street at all because there might be no

area that could be used as a continuous thoroughfare. We cannot agree with such an extreme position.[1]

For these reasons, the areas of the highway designated for parallel parking are distinguishable from the shoulder at issue in *Grimes*. A highway shoulder is not designed for regular or continuous vehicular travel; rather, it is designed to permit brief moments of travel during an emergency and to provide a vehicle with a safe place to stop without blocking the highway. In contrast, the parallel parking areas at issue here are integrated into the highway's main travel lanes and were designed for regular vehicular travel in a variety of contexts. Moreover, the lanes for parallel parking plainly serve a dual purpose; it is legal to park in the lanes and it is legal to use them for travel beyond accessing them for parking. See, e.g., MCL 257.637(1)(a) (making it legal to use such areas to pass a vehicle that is or is about to make a left turn); MCL 257.637(1)(b). This is in contrast to a highway shoulder, which is not designed for regular or continuous travel and which is illegal to use for those purposes. See MCL 257.637(2) (prohibiting a driver from passing on the right "by driving off the pavement or main-traveled portion of the roadway").[2]

---

[1] Just as the placement of a parking meter without paint markings on the pavement does not alter the fundamental character of the curb lanes, the fact that there are paint markings on M-22 does not alter the fact that the curb lanes were designed to permit vehicular travel.

[2] It is noteworthy that the Legislature has referred to the main traveled portion of a highway in the statutes governing the use of highways. See, e.g., MCL 257.672(1) (making it a civil infraction to park a vehicle on the paved or main traveled portion of a highway when it is possible to park off the paved or main traveled portion); MCL 257.637(2). By referring to a main traveled portion, the Legislature recognized that a highway may contain areas that are designed for vehicular travel, even though they are not mainly for such travel.

The undisputed evidence concerning the actual physical features of the improvement at issue—namely the area on M-22 that has been designated for parallel parking—show that the parking lanes were designed for vehicular travel.[3] As such, the Department had a duty to maintain that portion of the highway in reasonable repair under the highway exception to governmental immunity.[4]

### III. CONCLUSION

The trial court did not err when it concluded that the area of the highway at issue constituted part of the improved portion of the highway that was "designed for vehicular travel" within the meaning of MCL 691.1402(1). Consequently, it did not err when it denied the Department's motion for summary disposition on the ground that it was immune from liability.

---

[3] We agree that whether the parking lanes constituted a portion of the highway "designed for vehicular travel," MCL 691.1402(1), is a question of law when the facts concerning the improvement's physical attributes are undisputed. See *Grimes*, 475 Mich at 91 (deciding as a matter of law that a shoulder is not designed for "travel"). When the facts concerning the physical attributes are not in dispute, it is for the court to decide whether the improvement at issue was designed for vehicular travel. For that reason, we have disregarded the conclusions stated by the parties' experts in the affidavits attached to the parties' summary disposition briefs.

[4] The Department also argues in passing that Yono failed to properly plead the highway exception to governmental immunity. Because the Department failed to properly raise this issue in statement of questions presented in its brief, MCR 7.212(C)(5); *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003), and failed to support it by analysis of Yono's complaint and the applicable law, we conclude that the Department has abandoned that issue on appeal. See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). In any event, we conclude that Yono's complaint sufficiently alleged facts warranting application of the highway exception. See *McLean v McElhaney*, 289 Mich App 592, 597; 798 NW2d 29 (2010).

Affirmed. There being an important question of public policy, we order that neither party may tax its costs. MCR 7.219(A).

BECKERING, J., concurred with M. J. KELLY, J.

TALBOT, J. (*dissenting*). I respectfully dissent. I believe that the portion of the road on which Helen Yono was allegedly injured was not in the improved portion of the highway designed for vehicular travel, and thus was not within the highway exception to governmental immunity. "[T]he highway exception [to governmental immunity] creates a duty to maintain only the 'traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.' "[1] When interpreting the highway exception, our Supreme Court rejected the broad definition of "travel," which could include "the shortest incremental movement by a vehicle on an improved surface."[2] The Court reasoned that because "[t]he Legislature modified the phrase 'the improved portion of the highway' with the phrase 'designed for vehicular travel,' " it was not intended that the highway exception extend "indiscriminately to every 'improved portion of the highway.' "[3] The Court explained that the distinction was created because the Legislature "believed there are improved portions of highway that are not designed for vehicular travel."[4] The Court cautioned that "[i]f 'travel' [were] broadly construed to include traversing even the smallest distance, then it must follow that every area surrounding the highway that has been improved for highway purposes is 'de-

---

[1] *Grimes v Dep't of Transp*, 475 Mich 72, 79; 715 NW2d 275 (2006) (citation, quotation marks, and emphasis omitted).

[2] *Id.* at 89, citing *Random House Webster's College Dictionary* (1995).

[3] *Grimes*, 475 Mich at 89.

[4] *Id.*

signed for vehicular travel' since such improved portions could support even momentary vehicular 'travel.' "[5] The Court stressed that the concepts of contemplated use and design should not be conflated.[6] Thus, the mere fact that the public uses a portion of highway for vehicular travel does not mean that it is designed for that use.[7] Accordingly, the Court held that "only the travel lanes of a highway are subject to the duty of repair and maintenance," and excluded "the shoulder from the scope of the highway exception."[8]

The portion of the road on which Yono was allegedly injured clearly was not designed for vehicular travel. Rather, it was at the edge of the parallel parking lane[9] "abutting the concrete gutter and curb." The lane in which the alleged defect was located was designed for parallel parking, as is evidenced by the demarcations on the pavement. While the road may be used to merge between the parking lane and the travel lane or to make a right turn, that use is merely "momentary" and under limited circumstances, when the lane is not occupied by parked vehicles. Similarly, travel in the lane while executing the maneuver of parallel parking requires movement in the lane for merely a short distance. Thus, the lane's limited use for travel does not transform the purpose of its design.[10]

---

[5] *Id.* at 90.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 91.

[9] The majority's analysis appears to avoid calling the area where the defect was located a "parallel parking lane" and instead refers to it as "the portion [of the highway] where parallel parking is permitted" seemingly to strengthen its argument. I believe that a review of the record demonstrates that the area is accurately described as a parallel parking lane.

[10] *Grimes*, 475 Mich at 90.

I do not believe that the parallel parking lane at issue was designed to be used, when unoccupied, to travel around stopped or slow vehicles in the travel lane or as a thoroughfare because those contentions are not supported by the record. MCL 257.637, which the majority cites, discusses permissible circumstances in which to overtake and pass moving vehicles on the right and states in pertinent part that "[t]he driver of a vehicle shall not overtake and pass another vehicle upon the right by driving off the . . . main-traveled portion of the roadway."[11] Additionally, although drivers may use the parking lane to pass or as a thoroughfare, use does not establish that the lane was designed for such.[12]

In its opinion, the majority notes that it is not persuaded by the Department of Transportation's (Department) assertion that the parallel parking lane is not a travel lane because it is not part of the thoroughfare. The majority explained that if a travel lane were defined that way it would result in the Department having no duty to maintain various lanes, "parts of lanes," and ramps.[13] The majority's characterization of the Department's argument reveals its failure to comprehend the issue presented on appeal. The Department asserted both in the trial court and before this Court that repair and maintenance of the parallel parking lane is not required because the lane is outside the travel lane. The Department in no way claims that a travel lane is restricted to a lane that is part of the thoroughfare. In fact, the Department conceded during

---

[11] MCL 257.637(2).

[12] *Grimes*, 475 Mich at 90.

[13] The majority provided the following lanes and ramps as examples of those that are not part of the thoroughfare: left-turn lanes, merge lanes, on- and off-ramps, right-turn lanes, median U-turn lanes, emergency turnarounds, and "the excess width provided on rural highways to permit drivers to proceed around vehicles that are waiting to turn left."

oral argument that an exit ramp, which is not part of
the thoroughfare, has been determined to be a travel
lane. That notwithstanding, I agree with the majority
that a lane "designed for public vehicular travel" should
not be limited to one that is part of the thoroughfare. It
is important to note, however, that despite their limited
use for travel, the lanes, "parts of lanes," and ramps
noted by the majority do not contain markings delin-
eating individual parking spaces and thus are distin-
guishable from the designated parking lane at issue in
this case.

Moreover, the majority's assertion that the Depart-
ment is arguing that it does not have a duty to repair
and maintain the "buffer zone," which the majority
asserts would result in the Department failing to have a
duty to repair and maintain "more than half the surface
area of the highway at issue," is misplaced. The affida-
vit of Gary Niemi, a development engineer for the
Department, describes the different areas of the road-
way, including the travel lane, the buffer zone, and the
parallel parking lane. Niemi's affidavit states that
"[t]he portion of the highway designed for through
traffic measures 22 feet wide." Although Niemi con-
cludes that "[t]he parallel parking lane is not designed
for vehicular travel," his affidavit makes no such con-
clusion regarding the buffer zone. Nor did the Depart-
ment make such an assertion before the trial court or
this Court. Thus, the record fails to support the major-
ity's argument that the Department contends that it
does not have a duty to repair and maintain the buffer
zone.

Assuming arguendo that the Department did con-
tend that it does not have a duty to repair and maintain
the buffer zone, the Department's duty regarding the
buffer zone is wholly irrelevant to the resolution of the

issues on appeal as it is not where the defect is located. Instead of discounting the Department's alleged argument regarding the buffer zone on the basis of relevancy alone, the majority uses the argument in combination with the Department's alleged assertion that a travel lane must be part of the thoroughfare to come to the illogical conclusion that "the Department's interpretation must mean that any time parking is permitted on a highway, the Department ceases to be responsible for the repair and maintenance of the area outside that used as a thoroughfare." The majority reaches a similar conclusion regarding a residential street allowing on-street parking. To reach its conclusion, the majority ignores the argument actually being made by the Department. The Department contends that in the instant case, the roadway at issue is specifically designated by painted markings for parallel parking and is not merely a highway or residential street that permits on-street parking without any designation. At oral argument, the Department specifically denied that it was asserting that when a residential two-lane street allows on-street parking, the Department fails to have a duty to repair and maintain the roadway.

While the majority appears to be persuaded by the fact that the parking lane at issue is not physically separated from the travel lane "by a median, driveway, or other barrier," failure to physically separate the parking lane from the travel lane is not dispositive of whether the lane was designed for vehicular travel.[14] Moreover, there were painted markings on the road indicating that the lane was intended for parking and the parking lane was narrower than the travel lane. As such, the roadway at issue was distinguishable from the

---

[14] See *Grimes*, 475 Mich at 74, 92.

remainder of the highway, making it clear that the lane was not designed for vehicular travel.

The majority is attempting to judicially legislate and fashion a general rule regarding the Department's duty related to highways that permit parking, as opposed to applying the facts of this case to the rule that our Supreme Court established in *Grimes*. Therefore, I would reverse the trial court's order denying the Department's motion for summary disposition based on governmental immunity.