LARSEN, J.
This is a line-drawing case, both literally and figuratively. We are asked to decide whether a parallel-parking lane, designated exclusively as such by painted lines on the highway, is “designed for vehicular travel” within the meaning of the highway exception[1] to the governmental tort liability act (GTLA).[2] Guided by our precedent and by the admonition that we are to narrowly construe exceptions to governmental immunity,[3] we conclude that it is not. Accordingly, we reverse the judgment of the Court of Appeals, which held otherwise, and remand this case to the Court of Claims for entry of summary disposition on behalf of defendant.
I. FACTS AND PROCEDURAL HISTORY
In 2011, plaintiff, Helen Yono, visited the village of Suttons Bay and parked in a space specifically designated for parallel parking along the northbound side of M-22, a highway under the jurisdiction of defendant, the Michigan Department of Transportation (the Department). When returning to her car, she stepped into a depression in the area designated as a parallel-parking space, fell, and suffered injuries. She filed suit in the Court of Claims, alleging that the Department *642 had breached its duty to maintain the improved portion of M-22 in a condition “reasonably safe and convenient for public travel.”[4]
The Department moved for summary disposition under MCR 2.116(C)(7), claiming that it was entitled to governmental immunity. The Department acknowledged its duty, set forth in MCL 691.1402(1), to maintain the “improved portion of’ M-22 that is “designed for vehicular travel,” but argued that Yono’s injury had not occurred on that portion of the highway because the parking lane was not designed for vehicular travel. Plaintiff countered that the entire roadbed, from one curb to the other, was designed for vehicular travel; as a result, she claimed that she had pleaded in avoidance of governmental immunity. For the court’s review of defendant’s motion, each party submitted an affidavit from an expert who was a highway engineer.[5]
The Court of Claims denied the Department’s motion for summary disposition. The court reasoned that plaintiff had alleged an injury that occurred “in the portion of the road. . . designed for vehicular travel because [a] vehicle would have to travel to get to the parking spot. . . .”
A divided Court of Appeals affirmed.[6] The majority observed that “the highway—including that portion *643 designated for parallel parking—is a contiguous whole; the portion where parallel parking is permitted is not physically separated from the center of the highway by a median, driveway, or other barrier.”[7] The majority agreed with the Court of Claims that “the lanes designated for parking were designed to permit vehicles to merge both from the center lanes to the parking lanes and from the parking lanes to the center lanes.”[8] Moreover, the majority surmised that “the parallel parking lanes were designed to be used (when unoccupied) to travel around stopped or slow vehicles that are in the center lanes and for turns.”[9] Indeed, the majority observed that “[a]bsent the painted markings, the area for parallel parking would be indistinguishable from the remainder of the highway.”[10] For all these reasons, the majority concluded that the parallel-parking lanes were “designed for vehicular travel.”
The dissent would have held that any vehicular travel in the parallel-parking lane “is merely ‘momentary’ and under limited circumstances” and that this momentary use does not “transform the purpose of its design” into vehicular travel.[11] The dissent disputed the majority’s contention “that the parallel parking lane at issue was designed to be used, when unoccupied, to travel around stopped or slow vehicles in the travel lane or as a thoroughfare because those contentions are not supported by the record” and *644 “MCL 257.637 . . . states in pertinent part that ‘[t]he driver of a vehicle shall not overtake and pass another vehicle upon the right by driving off the . . . main-traveled portion of the roadway.’ ”[12] And even if drivers did so use the parking lane, that would “not establish that the lane was designed for such.”[13]
This Court ordered oral argument on the Department’s application for leave to appeal.[14] Following argument, we remanded the case to the Court of Appeals to consider “what standard a court should apply in determining as a matter of law whether a portion of highway was ‘designed for vehicular travel,’ as used in MCL 691.1402(1),” and “whether the plaintiff has pled sufficient facts to create a genuine issue of material fact under this standard.”[15]
On remand, the Court of Appeals again affirmed the Court of Claims and concluded that plaintiff had pleaded in avoidance of governmental immunity.[16] The panel determined that defendant’s duty is “to maintain in reasonable repair any part of the highway that was specifically designed—that is, planned, purposed, or intended—to support travel by vehicles . .. , even if the lanes were designed as ‘specialized, dual-purpose, or limited-access travel lanes.’ ”[17] The panel discounted the relevance of the defense expert’s affidavit because the expert “never averred that he participated in or otherwise had knowledge of the actual design of the particu *645 lar section of M-22 at issue in this case . .. .”[18] The panel “rejected] the Department’s repeated contention that the paint markings used on a highway permit an inference concerning a highway’s actual design” because a “governmental entity’s decision to paint markings on the highway does not alter the fact that the highway was actually designed for vehicular travel over its full width.”[19] Because “vehicles must travel into and out of parallel parking lanes in order for those lanes to serve their purpose,” and because “the designers of M-22, at minimum, must have designed the parallel parking lanes at issue to support limited, albeit regular, vehicular travel beyond that which accompanies the use of the lanes for parking,” the panel concluded that the portion of M-22 at issue in this case fell within the duty outlined in the highway exception.[20]
This Court granted the Department’s application for leave to appeal.[21]
II. STANDARD OF REVIEW
We review de novo the question whether the Department is entitled to summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity.[22] We similarly review de novo the underlying questions of statutory interpretation.[23]
III. ANALYSIS
In 1964, the Legislature enacted GTLA “to make uniform the liability of municipal corporations, politi *646 cal subdivisions, and the state, its agencies and departments, when engaged in a governmental function . . . ,”[24] Under MCL 691.1407(1), “[e]xcept as otherwise provided in [GTLA], a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.”[25] This immunity “is expressed in the broadest possible language—it extends immunity to all governmental agencies for all tort liability whenever they are engaged in the exercise or discharge of a governmental function.”[26] The Legislature has provided six exceptions to this broad grant of immunity, which courts must “narrowly construeQ.”[27] One of these, the highway exception, exposes the Department to tort liability for failing to maintain in reasonable repair the highways within its jurisdiction.[28] The Leg *647 islature has specified, however, that this duty “extends only to the improved portion of the highway designed for vehicular travel. . . .”[29]
The first sentence of MCL 691.1402(1) articulates the general duty of a governmental agency: “Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel.”[30] The second sentence allows an injured person to recover damages from the governmental agency arising out of its “failure ... to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel. . . .”[31] The fourth sentence clarifies that
*648 the duty of a governmental agency to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.[32]
When interpreting GTLA, courts must keep in mind that “the immunity conferred upon governmental agencies is broad, and the statutory exceptions thereto are to be narrowly construed.”[33]
In Nawrocki v Macomb Co Rd Comm, this Court held that the fourth sentence of MCL 691.1402(1) “narrows the duty of. . . the state . . . with regard to the location of the dangerous or defective condition,” but not with regard “to the type of travel or traveler.”[34] Pedestrians, such as Yono, may therefore plead in avoidance of governmental immunity as long as “the condition proximately causing injury or property damage is located in the improved portion of the highway designed for vehicular travel [and] not otherwise expressly excluded . . . ,”[35] In Grimes v Dep’t of Transp, this Court held “that only the travel lanes of a highway are subject to the duty of repair and maintenance specified in MCL 691.1402(1).”[36] Consistently with our precedent, then, this case asks us to decide whether a parking lane is a “travel lane”—and therefore “designed for vehicular travel”—within the meaning of the statute.[37]
*649 In some sense, to ask this question is to answer it. In common English usage, a parking lane is closer to being a travel lane’s antonym than its synonym. To park is to stop; to travel is to go. Deeper analysis confirms this initial impression.
In Grimes, the Court concluded that the improved shoulder of a highway was not designed for vehicular travel within the meaning of the highway exception because “travel” does not encompass the incremental movement that accompanies a vehicle’s movement from the travel lanes onto the shoulder.[38] In so concluding, the Court cautioned against “conflatfing] two disparate concepts: design and contemplated use.”[39] Thus, the question in Grimes was not whether “road shoulders are ‘designed’ with the intention that they be used by vehicles”; the Department did not, in fact, dispute that they were.[40] The question instead was whether “shoulders are designed as travel lanes.”[41]
To be designed as a travel lane and therefore to be designed for vehicular travel, the Court explained, *650 required something more than the fact that the shoulder “could support even momentary vehicular ‘travel.’ ”[42] The mere fact that “a motorist momentarily swerv[ing] onto the shoulder” could, in a broad sense, “be said to have traveled on the shoulder” was not enough to transform the shoulder into a lane “designed for vehicular travel.”[43]
This case presents a question more difficult than the one at issue in Grimes, but both focus on what constitutes vehicular travel.[44] The shoulder of a highway is designed as a temporary breakdown or emergency area. It is not intended or designed to be part of a traveler’s journey from one location to another. This case calls on us to determine whether a lane of designated, curbside parallel-parking spaces is designed for vehicular travel within the meaning of the highway exception. A parallel-parking lane specifically invites drivers to end their journeys there and, sometime later, begin new journeys, in a way that a shoulder does not. As a result, Grimes might be read as not controlling the outcome of this case. Nevertheless, Grimes cautions against confusing the potential uses that a highway “could support”[45] with what its design was intended to accomplish. In other words, just because an area of a highway can support vehicular travel in ways that are not part of its design does not bring it within the highway exception. Plaintiffs evidence that the road *651 bed structure is consistent from curb to curb shows only that the entire roadbed could support vehicular travel, not that the entire roadbed was “designed for vehicular travel.”
The Court of Appeals attempted to distinguish use from design, but its analysis focused too narrowly on the highway’s initial design, rather than the highway’s design at the time of the injury. The panel used a hypothetical example to illustrate the importance of a highway’s initial design: “A governmental entity might have designed a particular highway to support vehicular travel for its full width, but might have later decided to limit the traffic to a narrow portion in the center of the highway for safety reasons or even to facilitate parking for businesses.”[46] In this scenario, the panel determined that “the governmental entity’s decision” to limit vehicular travel on the highway would “not alter the fact that the highway was actually designed for vehicular travel over its full width” when it was initially constructed.[47] The panel also emphasized its belief that “paint markings on the highway do not correspond to the actual design ... in the absence of specific evidence connecting the design with the proposed markings . . . .”[48]
By focusing on the highway’s design at the time of its initial construction, rather than its design at the time of the injury, the Court of Appeals ignored the Department’s ongoing duty to ensure that the highways of this state are safe for vehicular travel.[49] That *652 ongoing duty ensures that a highway’s design is neither static nor dependent exclusively on whether a roadbed structure can “support vehicular travel.”[50] Contrary to the Court of Appeals’ conclusion, paint markings and other traffic control devices can and do delineate how a highway is designed and redesigned over its useful life.[51]
Consider a situation familiar to all Michigan drivers: highway repairs. Suppose a state highway develops a sinkhole within a travel lane that renders the lane unsafe for travel. As the Department repairs the defect in the highway, it might place traffic-control devices—including barricades, signage, and paint markings—to authorize drivers to travel along what had initially been designed as the highway’s shoulder. That shoulder—not the closed lane under repair— would then have been redesigned “for vehicular travel” within the meaning of MCL 691.1402(1), albeit temporarily. Once the repair is complete, the traffic-control devices would be removed, the paint lines would again designate the area as a shoulder, and the design of the highway would again have changed and reverted back to its initial design as a shoulder.
As a result, and contrary to the Court of Appeals’ analysis, we must consider how the Department had designed the highway at the time of the alleged injury. *653 The parties do not dispute that the area at issue in this case was specifically marked as a parallel-parking lane at the time of the alleged injury. The Department, in exercising its statutory authority to draft the Manual on Uniform Traffic Control Devices,[52] has specifically differentiated lanes designed as parallel-parking lanes from lanes designed for travel.[53] Although some lanes on a highway might be designed for dual purposes, the only traffic-control devices present in the lane at issue in this case indicate that it was designed to be used as a parallel-parking lane.[54] Although plaintiffs expert opined that drivers sometimes travel along the parallel-parking lane when it is convenient to do so, the evidence presented regarding the lane’s design— the paint delineating the individual parallel-parking spaces—showed a parallel-parking lane, not a travel lane.[55]
*654 The dissent and the Court of Appeals conclude that the momentary ingress and egress necessarily accompanying parallel parking independently warrants the determination that the parking lane is designed for vehicular travel. Grimes, however, rejected the notion that “travel” should be “broadly construed to include traversing even the smallest distance . . . ”[56] If traversing a short distance (entering and exiting the shoulder) is not “travel” within the meaning of the statute, we do not see how the same basic action (entering and exiting a parking lane) can be considered travel and still be faithful to our precedent.[57]
*655 The dissent posits that the act of parking “completes, and is thus a part of,” vehicular travel.[58] On this theory, “a ‘parking lane’... is simply a type of ‘travel lane’ for purposes of the highway exception . . . .”[59] That a person will park at the end of travel does not turn parking into travel. To draw from the dissent’s definitions, “travel” involves “ ‘the coming and going of people or conveyances along a route’ ” or “ ‘movement or passage in general.’ ”[60] These definitions connote movement, not starting or stopping a journey, and the parking lanes at issue here do not invite movement *656 that is more sustained than that at issue in Grimes. Indeed, in common parlance, we consider traveling and parking to be two different things. We travel to our destination, and we park once we have arrived.
“[0]ne basic principle . . . must guide our decision today: the immunity conferred upon governmental agencies is broad, and the statutory exceptions thereto are to be narrowly construed.”[61] Our caselaw teaches that “[b]ecause [MCL 691.1402(1)] is a narrowly drawn exception to a broad grant of immunity, there must be strict compliance with the conditions and restrictions of the statute.”[62] We cannot conclude that the statute clearly applies to the act of parking, which is only incidental to travel and does not itself constitute travel. Accordingly, defendant is entitled to governmental immunity.[63]
Our holding does not suggest that the highway exception requires that the area in question be designed exclusively for vehicular travel. For example, signage might indicate particular hours during which a designated parking lane is to be used as an additional travel lane. Or a street in a residential neighborhood, with no designated parking lane, might be designed for both curbside parking and vehicular travel.[64] In this *657 case, however, the lane was designated by the paint markings as a parking area, with no indication that it was also designed for vehicular travel. Accordingly, plaintiff cannot fit these facts into the narrow confines of the highway exception to GTLA.[65]
For these reasons, we reverse the judgment of the Court of Appeals and remand this case to the Court of Claims for entry of summary disposition in favor of defendant.
YOUNG, C.J., and Markman and Zahra, JJ., concurred with Larsen, J.

 MCL 691.1402(1).

 MCL 691.1401 et seq.

 Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 158; 615 NW2d 702 (2000).

 MCL 691.1402(1).

 Defendant’s expert, one of its development engineers, averred that the parallel-parking lane where plaintiffs injury occurred “is not considered part of the traveled way” and instead is separated from the travel lanes by a buffer zone. Plaintiffs expert averred that the entire paved surface consists of travel lanes, that the parallel-parking lane is dual purpose for travel and parking, and that “the only difference between the differently labeled travel lanes is the type of paint marks or striping and the measured widths of the travel lanes.”

 Yono v Dep’t of Transp, 299 Mich App 102; 829 NW2d 249 (2012) (Yono I).

 Id. at 111.

 Id.

 Id. To support this proposition, the majority claimed that the Michigan Vehicle Code allows drivers “to use that type of area as a travel lane when the highway has ‘unobstructed pavement not occupied by parked vehicles of sufficient width for 2 or more lines of moving vehicles in each direction!.]’ ” Id. at 111-112, quoting MCL 257.637(1)(b).

 Id. at 111.

 Id. at 116 (Talbot, P.J., dissenting).

 Id. at 117 (alteration in original).

 Id.

 Yono v Dep’t of Transp, 495 Mich 859 (2013).

 Yono v Dep’t of Transp, 495 Mich 982, 982-983 (2014).

 Yono v Dep’t of Transp (On Remand), 306 Mich App 671, 675, 685-686; 858 NW2d 128 (2014) (Yono II).

 Id. at 692, quoting Yono I, 299 Mich App at 110.

 Yono II, 306 Mich App at 693-694.

 Id. at 695-696.

 Id. at 695.

 Yono v Dep’t of Transp, 497 Mich 1040 (2015).

 Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999).

 Whitman v City of Burton, 493 Mich 303, 311; 831 NW2d 223 (2013).

 1964 PA 170, title. Approximately three years before GTLA’s enactment, this Court had abolished common-law governmental immunity for municipalities. Williams v Detroit, 364 Mich 231; 111 NW2d 1 (1961). As amended by 2002 PA 400, GTLA’s title now provides that it is an act “to malee uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, officers, employees, and volunteers thereof.. . when engaged in the exercise or discharge of a governmental function . .. .”

 MCL 691.1401(b), as amended by 2012 PA 50, defines “governmental function” as “an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law.” The prior version of the statute, as amended by 2001 PA 131, differed only in that this definition appeared in Subdivision (f) instead.

 Nawrocki, 463 Mich at 156, citing Ross v Consumers Power Co (On Rehearing), 420 Mich 567, 618; 363 NW2d 641 (1984).

 Nawrocki, 463 Mich at 158 (emphasis omitted).

 MCL 691.1402(1), as amended by 2012 PA 50, provides in full:
Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its *647 jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. The liability, procedure, and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21 of chapter IV of 1909 PA 283, MCL 224.21. Except as provided in [MCL 691.1402a], the duty of a governmental agency to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. A judgment against the state based on a claim arising under this section from acts or omissions of the state transportation department is payable only from restricted funds appropriated to the state transportation department or funds provided by its insurer.
This statute has only minor differences from the prior version, as amended by 1999 PA 205, which are not relevant to our decision.

 Id.

 MCL 691.1401(c), as amended by 2012 PA 50, defines “highway” as “a public highway, road, or street that is open for public travel. Highway includes a bridge, sidewalk, trailway, crosswalk, or culvert on the highway. Highway does not include an alley, tree, or utility pole.” The prior version of the statute, as amended by 2001 PA 131, differed in that the definition appeared in Subdivision (e) instead and used plural forms for “bridge,” “sidewalk,” etc.

 MCL 691.1402(1).

 Id.

 Nawrocki, 463 Mich at 158 (emphasis omitted).

 Id. at 171.

 Id.

 Grimes v Dep’t of Transp, 475 Mich 72, 91; 715 NW2d 275 (2006).

 The parties do not ask us to revisit Grimes, but the dissent claims that Grimes’s holding “must not be permitted to obscure or supplant the *649 language chosen by the Legislature to express its intent.” Post at 659. We agree that the statutory language prevails. Grimes’s holding is this Court’s interpretation of when the improved portion of the highway is “designed for vehicular travel” for purposes of MCL 691.1402(1), and we are not free to disregard it. Moreover, we view this language as a fitting shorthand for whether a particular portion of the highway is “designed for vehicular travel.” The dissent agrees that paint markings matter in discovering a highway’s design. It is common to speak of paint markings on a highway as denoting “lanes,” “such as a ‘thoroughfare lane,’ a ‘merge lane,’ a ‘turn lane,’ and so on[.]” Post at 664. The only dispute in this case is whether a “parking lane” necessarily counts as a “travel lane,” i.e., whether its designation for parking, without any other indicia of its being designed for travel, is sufficient to make it “designed for vehicular travel.”

 Grimes, 475 Mich at 89-90.

 Id. at 90.

 Id. at 89.

 Id.

 Id. at 90.

 Id. at 89.

 This more general understanding of vehicular travel stands in opposition to that of the dissenting opinion, which focuses on an individual’s travel route. MCL 691.1402(1) directs the Court to look not at a person’s actual journey from one point to another, but instead to the way in which the road was designed and whether that design was generally intended for vehicular travel.

 Id. at 90.

 Yono II, 306 Mich App at 695-696.

 Id. at 696.

 Id. By using the phrase “proposed markings,” the Court of Appeals suggested that the only potentially relevant paint markings are those predating the highway’s construction.

 MCL 691.1402(1).

 See Yono II, 306 Mich App at 696-696.

 The Michigan Vehicle Code provides an explicit connection between a highway’s traffic-control devices and the Department’s design for a highway. MCL 257.608 gives the Department, in conjunction with the State Police, the authority to “adopt a manual and specifications for a uniform system of traffic-control devices .. . for use upon highways within this state.” MCL 257.611(1) gives those traffic-control devices legal effect for enforcing the Department’s intended design of a highway by providing that “[t]he driver of a vehicle. . . shall not disobey the instructions of a traffic control device . .. .”

 See MCL 257.608.

 The manual defines “traveled way” as “the portion of the roadway for the movement of vehicles, exclusive of the shoulders, berms, sidewalks, and parking lanes.” Manual on Uniform Traffic Control Devices (2011 Michigan MUTCD), p 22.

 The similar circumstance of angled on-street parking helps to illustrate the single purpose delineated by the paint markings at issue in this case. Where the Department or a local road authority has provided angled on-street parking for drivers, it is evident that the highway is not designed for vehicles to use the entire width of the paved surface for travel, even when unobstructed. We do not see any substantive difference between specifically delineated angled-parking spaces and parallel-parking spaces.

 In Yono I, the Court of Appeals supported its conclusion that the entire roadbed was designed for vehicular travel by citing MCL 257.637(l)(b), which allows the driver of a vehicle to “overtake and pass upon the right” another vehicle when “unobstructed pavement not occupied by parked vehicles [is] of sufficient width for 2 or more lines of moving vehicles in each direction . .. .” Yono I, 299 Mich App 111-112. However, this only applies “when the vehicles are moving in substantially continuous lanes of traffic,” MCL 257.637(l)(b), and MCL 257.637(2) provides that a driver may not “pass another vehicle upon *654 the right by driving off the pavement or main-traveled portion of [a] roadway.” The Court of Appeals, therefore, erred by relying only on Subsection (l)(b): by placing paint markings differentiating the parking area from the travel lanes, the highway designers indicated that the use of that area would be limited to parallel parking and the momentary ingress and egress that accompanies it. MCL 257.611(1) provides that “[t]he driver of a vehicle . .. shall not disobey the instructions of a traffic control device .. ..” MCL 257.70 defines “traffic control devices” as “all signs, signals, markings, and devices not inconsistent with this act placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic.”

 Grimes, 475 Mich at 90. The dissent observes that “the lines delineating the parking spots ... specifically invite a vehicle to drive over this portion of the highway” and contrasts this invitation to that of a shoulder, “which, as its own paint markings and other designators make clear, is not designed as part of an intended route, but instead is designed to run alongside that route and provide temporary accommodation for emergently stopped or disabled vehicles.” Post at 661-662. We are not persuaded. The act of parking—like the act of pulling onto the shoulder of a highway—is only incidental to travel. In each circumstance, the responsible governmental agency has separated the part of the highway designed for vehicular travel from the part of the highway where vehicles cease or begin traveling. Moreover, the responsible governmental agency specifically invites motorists to engage in incidental movement when going into and out of both shoulders and parking spaces.

 There is no allegation in this case, nor do we think there reasonably could be, that the distance one might travel from the right lane onto the *655 shoulder is somehow greater than the distance one might travel from the right lane into a parallel-parking lane such as the one at issue here. The dissent believes that this is beside the point because, as the dissent sees it, even if the physical actions are the same, “the vehicle using the shoulder is digressing from the highway’s designed vehicular route, whereas the vehicle using the parking spot is proceeding along it[.]”Posf at 664-665. We do not find this distinction persuasive: like the vehicle using the shoulder, the vehicle using the parking spot also digresses from the highway’s travel lanes—the portion of the highway designed for vehicular travel. That digression is what makes the difference in this case.
The dissent distinguishes the often unplanned movement involved in a vehicle’s use of a shoulder from the often planned movement involved in its use of a parking lane. But this distinction is inconsistent with its broad definition of “travel” and shows why its rationale is ultimately inconsistent with Grimes. The dissent claims that a parking lane is designed for travel because travel does not end until the vehicle comes to a complete stop, while criticizing this opinion for suggesting otherwise. But, to be faithful to Grimes, we must recognize that travel necessarily ends before a vehicle reaches a complete stop along a shoulder. That a shoulder stop is often unplanned and a parking stop is often planned does not matter. Grimes informs us that a highway’s design for vehicular travel does not encompass the incidental movement required to bring a vehicle to a stop along a shoulder. That holds equally true for a portion of the highway designed solely for parking, as the paint markings at issue here illustrate.

 Post at 663.

 Post at 664.

 Post at 660, quoting Random House Webster’s College Dictionary (2005).

 Nawrocki, 463 Mich at 158.

 Id. at 158-159, citing Scheurman v Dep’t of Transp, 434 Mich 619, 629-630; 456 NW2d 66 (1990) (opinion by Riley, C. J.).

 Because no fact questions remain regarding the highway’s design, we do not reach the issue of how to resolve fact questions on a motion for summary disposition involving governmental immunity under MCR 2.116(C)(7).

 This may have been the factual situation in Nawrocki, and, if so, it would distinguish the facts oí Nawrocki from those of the present case. But whether the design of the highway in Nawrocki can be distinguished from the highway design here is irrelevant because our opinion in Nawrocki did not address the only question at issue in this case: *657 whether the situs of the injury was within the improved portion of the highway “designed for vehicular travel.” Instead, this Court in Nawrocki held only that a pedestrian could plead in avoidance of governmental immunity under the highway exception. Plaintiff, nonetheless, “remains steadfast that Nawrocki remains dispositive,” drawing our attention to the factual similarities between that case and the present one, and even appending contemporary (though not contemporaneous) Google Maps Street View photographs of the accident site in Nawrocki. This effort is misplaced. As we said recently: “To argue, by working backwards from” the facts of a case to a conclusion of law not addressed by the Court “is to build a syllogism upon a conjecture.” People v Seewald, 499 Mich 111, 121 n 26; 879 NW2d 237 (2016).

 The dissent posits that, under this holding, the governmental agency will sometimes have an obligation to maintain the improved portion of the highway “as to a parking-designated portion of a highway” and sometimes not. Post at 669. This is because we and the dissent have different understandings of what constitutes vehicular travel, not because our decision is somehow inconsistent with our prior precedent. Our decision today is entirely consistent with Grimes. Whether the governmental agency has an actionable duty to maintain the improved portion of the highway in reasonable repair depends on whether that portion is designed for vehicular travel, and this will always depend on the nature of the location at issue.