*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAUREEN GENTRY and BRUCE GENTRY,

        Plaintiffs-Appellees,

v

STATE OF MICHIGAN and DEPARTMENT OF
TRANSPORTATION,

        Defendants-Appellants.

UNPUBLISHED
May 6, 2021

No. 353174
Court of Claims
LC No. 19-000137-MD

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendants appeal as of right the order of the trial court denying in part and granting in part their motion for summary disposition under MCR 2.116(C)(7). We affirm in part, reverse in part, and remand for entry of judgment in favor of defendants.

## I. FACTS

This case arises from plaintiff Maureen Gentry's fall on Michigan Avenue in the City of Detroit. On March 10, 2019, Maureen attended a St. Patrick's Day parade held on Michigan Avenue from Sixth Street to Fourteenth Street. While walking along Michigan Avenue near the intersection of Cochrane Street, she stumbled over two bolts protruding from the pavement and fell, injuring her ankle.

The location where Maureen fell is depicted in the photograph below. At that location, Michigan Avenue has five travel lanes, being two lanes in each direction and one turn lane in the center. On the north side of Michigan Avenue, there is a parallel-parking lane adjacent to the travel lane. On the other side of the parallel-parking lane is a buffer zone that widens at the Cochrane Street intersection, and which is identified by diagonal pavement markings. On the other side of the buffer zone is a bike lane adjacent to the sidewalk. Thus, although the buffer zone widens at the end of the parallel-parking lane where it would otherwise meet the Cochrane Street intersection, most of the buffer zone is a narrow strip located between the parallel-parking lane and the bike lane; in other words, on the opposite side of the parallel-parking lane from the



designated driving lanes. The parties do not dispute that Maureen fell in the buffer zone where it widens at the Cochrane Street intersection.

Plaintiffs initiated this action invoking the highway exception to governmental immunity. Plaintiffs alleged that defendants failed to maintain in reasonable repair the portion of Michigan Avenue where Maureen fell, and as a result that area of the road was not reasonably safe for public travel. Plaintiffs alleged that defendants had removed from the buffer zone the plastic pylons that had been attached to the pavement, resulting in the securing bolts being exposed on the surface of the road at the time of Maureen's fall. Plaintiffs alleged that as a result of defendants' negligence, Maureen suffered physical injury, medical expenses, and economic loss. Plaintiffs' complaint also alleged a claim for loss of consortium by Maureen's husband, plaintiff Bruce Gentry.

Defendants moved for summary disposition under MCR 2.116(C)(7), asserting that plaintiffs' claim was barred by governmental immunity. Defendants contended that because Maureen fell in a buffer zone not designed for vehicular travel, the highway exception to governmental immunity did not apply, and defendants were entitled to assert governmental immunity to defeat plaintiffs' claims.

In support of their motion, defendants submitted the affidavit of Brian Atkinson, a Michigan Department of Transportation Traffic Safety and Operations Engineer, who asserted that

the buffer zone where Maureen fell was not intended for vehicular travel but was instead intended to separate the parallel parking area from the bicycle lane, and also to ensure visibility at the intersection. Atkinson stated that the buffer zone was marked with diagonal pavement markings to inform the public that vehicles should not enter the buffer zone, as well as "cylindrical delineators" bolted to the surface of the roadway. Atkinson stated that the delineators in the buffer zone where Maureen fell had been removed or destroyed, leaving behind the bolts protruding from the pavement surface. He further stated that delineators were never installed in the vehicle travel lanes of Michigan Avenue.

In response to defendants' motion, plaintiffs argued that as recently as October 2016, the area where Maureen fell had been a lane for vehicular travel, but that at some time before August 2018, white lines were painted on the pavement and plastic pylons or delineators were installed to delineate that area as a buffer zone. Plaintiffs argued that at the time Maureen fell, the paint had faded significantly and the delineators had been removed. Plaintiffs contended that because the buffer zone was not recognizable as a buffer zone, defendants were not entitled to assert governmental immunity.

The trial court granted defendants summary disposition of Bruce Gentry's loss of consortium claim, holding that the claim was not permitted under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. The trial court denied defendants' motion for summary disposition of Maureen's claim, however, holding that a genuine issue of material fact existed regarding the applicability of the highway exception to governmental immunity in this case. The trial court reasoned that at the time of Maureen's injury, the relevant section of Michigan Avenue was closed to normal traffic and was designated as a parade route. Thus, any vehicular traffic traveling on Michigan Avenue was not traveling under normal driving conditions and restrictions. The trial court reasoned:

> [D]efendant[s] [have] only provided evidence of the purported buffer zone's intended use while Michigan Avenue is otherwise open to through traffic. Defendant[s] [have] not provided the Court with any evidence of the intended design of Michigan Avenue as a parade route. That is, defendant has not provided the Court with any evidence to suggest that the vehicular traffic permitted by the parade route was prohibited from traveling in the buffer zone during the course of the parade . . .

> [Defendants' motion] lacks documentary support for the notion that the pertinent stretch of Michigan Avenue was not designed for vehicular traffic at the time of the alleged injury. Viewing the evidence and record as this Court must do on summary disposition review . . . defendant[s'] motion must be denied because a question of fact regarding the applicability of the highway exception exists.

The trial court thereafter denied defendants' motion for reconsideration. Defendants now appeal.

## II. ANALYSIS

Defendants contend that the trial court erred by denying in part their motion for summary disposition on the basis that they had not demonstrated that during the parade, the buffer zone was not a travel lane designed for vehicular travel. We agree.

## A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(7) is appropriate when the claim is barred by immunity. *Mays v Governor of Michigan*, 506 Mich 157, 181; 954 NW2d 139 (2020). When reviewing a trial court's decision to grant or deny summary disposition under MCR 2.116(C)(7), we consider all documentary evidence in the light most favorable to the nonmovant, *Margaris v Genesee Co*, 324 Mich App 111, 115; 919 NW2d 659 (2018), and accept the complaint as factually accurate unless it is specifically contradicted by affidavits or other documentation. *Frank v Linkner*, 500 Mich 133, 140; 894 NW2d 574 (2017). If there is no factual dispute, and if reasonable minds could not differ regarding the legal effect of the facts, whether summary disposition is proper is a question of law for the court. *Hutchinson v Ingham Co Health Dep't*, 328 Mich App 108, 123; 935 NW2d 612 (2019).

This Court also reviews de novo issues involving the proper interpretation of statutes. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). The application of governmental immunity and a statutory exemption to governmental immunity present questions of law subject to de novo review. *Petersen Fin LLC v City of Kentwood*, 326 Mich App 433, 441; 928 NW2d 245 (2018).

## B. GOVERNMENTAL IMMUNITY

The state and its agencies generally have immunity from tort liability under the GTLA. See MCL 691.1407(1). Under the GTLA, except as otherwise provided in that act, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." *Yono v Dep't of Transp*, 499 Mich 636, 646; 885 NW2d 445 (2016). This immunity is broadly extended to all governmental agencies for all tort liability whenever the agency is engaged in the exercise or discharge of a governmental function. *Id*., citing *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 156; 615 NW2d 702 (2000).

In contrast to the broad expression of governmental immunity from tort liability, the GTLA provides six exceptions to immunity that are narrowly construed. *Yono*, 499 Mich at 648. One of these is the highway exception, which exposes the governmental agency to liability for failure to maintain the highways within its jurisdiction in reasonable repair. *Id*. at 646. In that regard, MCL 691.1402(1) provides, in relevant part:

> Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway

under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. . . . [T]he duty of a governmental agency to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel. . . .

Thus, the duty imposed by the highway exception extends only to the "improved portion of the highway designed for vehicular travel." Our Supreme Court has held that this duty does not extend to areas outside of the portion of the highway designed for vehicular travel, such as the shoulder of the highway, even if that outside portion could temporarily be used by a vehicle traveling on the highway. *Grimes v Dep't of Transp*, 475 Mich 72, 91; 715 NW2d 275 (2006). Similarly, the Court has held that a government agency's duty to repair and maintain highways does not extend to a parallel-parking lane because it was not designed for vehicular travel, even though it could be used momentarily for vehicular travel. *Yono*, 499 Mich at 650-651.

Our Supreme Court has observed that when determining whether an area of a highway was designed for vehicular travel, the potential uses that a highway could support should not be confused with the uses intended by the highway's design. *Id*. at 650, citing *Grimes*, 475 Mich at 90. "In other words, just because an area of a highway can support vehicular travel in ways that are not part of its design does not bring it within the highway exception." *Yono*, 499 Mich at 650. Thus, the question is not whether an area could support vehicular travel, but whether it was designed for vehicular travel. *Id*. at 650. Further, the focus of such an inquiry is not the initial design of the highway, but the highway's design at that time of the injury. *Id*. at 651.

A separate inquiry, however, is whether a road is open to public travel; the highway exception to governmental immunity does not apply when a road has been marked as closed to public traffic. *Snead v John Carlo, Inc*, 294 Mich App 343, 368; 813 NW2d 294 (2011). "Highway" is defined in the GTLA as "a public highway, road, or street that is open for public travel." MCL 691.1401(c). A road, or a portion thereof, that is closed to public travel does not fit within the definition of "highway" under the GTLA, and the highway exception therefore does not apply in that circumstance. See *Snead*, 294 Mich App at 359-361. A highway is not open for travel when the government closes the highway and marks it as closed, typically using adequate traffic-control devices. *Id*. at 368. The test to determine whether a highway is closed to the public is "whether a reasonable motorist, under all the circumstances, would believe that the road was open for travel." *Id*. at 361.

In this case, defendants moved for summary disposition of plaintiffs' claims, contending that the buffer zone where Maureen fell was not part of the roadway designed for vehicular travel. In ruling upon the motion, the trial court accurately observed that at the time of Maureen's fall, that section of Michigan Avenue was closed to "normal" traffic for a parade. The trial court observed, in relevant part:

[A]t the time of the alleged injury, the pertinent stretch of Michigan Avenue was, by all accounts, a parade route. . . . Taking the evidence in a light most favorable to plaintiffs, the non-moving parties, and drawing reasonable inferences in their favor

as this Court must do at this stage of the litigation, . . . it is reasonable to assume that the pertinent stretch of highway was closed to normal traffic at the time it was designated as a parade route and that any vehicular traffic traveling on Michigan Avenue was not traveling under normal driving conditions or restrictions.

The evidence supports the trial court's finding that the section of Michigan Avenue where Maureen fell was closed to public vehicular traffic at the time she fell. Defendants assert that a highway-closure order had been issued in response to a permit request for the parade. Consistent with the permit, barricades were erected along with other traffic-control devices to fully close the road. The record therefore supports a finding that under the circumstances, a reasonable motorist would have believed that the section of Michigan Avenue in question was not open for public travel during the St. Patrick's Day parade. See *Snead*, 294 Mich App at 361.

The trial court concluded, however, that although defendants had presented evidence that the buffer zone was not intended for vehicular travel when the road was open to the public, defendants had not presented evidence about the intended use of the buffer zone when the road was closed for the parade. This assessment blurs the inquiry whether the buffer zone was part of the highway designed for vehicular travel with the separate inquiry whether the road was closed to public travel. Construing the immunity granted by the GTLA broadly and the highway exception narrowly, as we must, see *Yono*, 499 Mich at 646, if the road were closed to public travel, the road did not meet the definition of highway under the GTLA. In that circumstance, the highway exception would not apply to preclude governmental immunity, and no further inquiry would be necessary to ascertain the intended use of the buffer zone. See *Snead*, 294 Mich App at 359-361.

We need not resolve that issue here, however. The record demonstrates that at the time Maureen fell, the buffer zone was not designed as a vehicular travel lane but was instead intended to function as a buffer zone, regardless of the road being closed for the parade. The record indicates that at the time of her fall, pedestrian barricades had been installed along the length of the parade route intended to separate the floats from the spectators during the parade. The floats were to travel inside the barricaded area for the duration of the parade, and the spectators were to remain outside the barricaded area during the parade. The parallel-parking lanes, buffer zones, and bicycle lanes on Michigan Avenue were outside the barricaded area in the area reserved for pedestrians, and the parade floats were excluded from those areas. The parade barricades thus did not "redesign" the buffer zone during the parade, but rather indicated that the buffer zone continued to not be intended for vehicular travel, consistent with its designed purpose. See *Snead*, 294 Mich App at 359. Although plaintiffs assert that motorists could nevertheless enter the buffer zone during the parade, the relevant inquiry is not whether an area can support vehicular travel, but whether it was designed for vehicular travel. See *Yono*, 499 Mich at 650-651.

In *Yono*, the plaintiff was injured while returning to her car that was parked in a parallel-parking area adjacent to the vehicular travel lanes of a highway. Despite the proximity of the parallel-parking area to the travel lane, and despite the fact that cars must travel into the parallel parking lane to use the area for parking, our Supreme Court held that the evidence indicated that the parallel-parking area was designed for parallel parking and not for vehicular travel. *Id*. at 656-657. Here, to an even greater extent than in *Yono*, the design of the buffer zone, located primarily between the parallel parking spaces and the bike lane, demonstrates that it was intended to serve

as a buffer between the parallel-parking spaces and the bike lane, and not as a vehicular travel lane. Moreover, unlike a parallel-parking lane where vehicles are permitted for the limited purpose of parking, the purpose of the buffer zone is to exclude vehicles altogether. The evidence presented regarding the buffer zone's design demonstrates that the area, on the day of the accident and any other day, was in no respect a travel lane intended for vehicular travel. Because Maureen's injury did not occur in a portion of Michigan Avenue designed for vehicular travel, the highway exception to governmental immunity does not apply.

We affirm the portion of the trial court's order granting defendants summary disposition of plaintiff Bruce Gentry's claim, reverse the portion of the trial court's order denying defendants summary disposition of plaintiff Maureen Gentry's claims, and remand for entry of judgment in favor of defendants. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael F. Gadola

-7-